**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBORAH REARICK,** | : | **CIVIL ACTION LAW** |
| **Plaintiff** | : | **NO. 4:13-cv-02520** |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Blewitt)** |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY,** | : | **JURY TRIAL DEMANDED** |
| **Defendant** | : | |

### AMENDED COMPLAINT

Plaintiff, Deborah Rearick, a Pennsylvania citizen, by and through counsel, Andrew W. Barbin, P.C., brings this action against the Pennsylvania State University, and alleges upon knowledge, information, and belief, as follows:

### PARTIES

1.     Plaintiff, Deborah Rearick (hereinafter "Rearick" or "Plaintiff"), is an adult female Pennsylvania citizen residing at 3796 Powells Road, Petersburg, Pa 16669.

2.     Defendant, the Pennsylvania State University (hereinafter "PSU" or "Defendant"), is a Commonwealth funded institution of higher education whose employment actions are at issue in this matter.

### JURISDICTION AND VENUE

3.     Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1331, 1343 (a) (3)(4) and by 42 U.S.C. §§ 2000e and 2000e-3(a), and related statutes, all relevant employment events to this action took place within the Middle District of Pennsylvania.

4.     All Parties and most if not all probable witnesses reside in the Middle District in the State College area.

**Jury Demand**

5.      A jury trial is requested on any and all issues upon which a jury trial is permitted.

**Relevant Employment History and Context**

6.      While prior conduct stands outside the limitations period, the underlying facts remain relevant to the context of the present actionable conduct, and to the issues of awareness, causality/animus and impact.

7.      For clarity sake, Headings are used to denote different categories and time periods of conduct and to specify clearly which conduct is averred to be currently actionable.

8.      Plaintiff was hired by Defendant on June 8, 1981.

9.      She was promoted to and moved into the Property Inventory Department in February 1986.

10.     From commencement of employment until 1998, Plaintiff consistently received above average Staff Review and Development Plans ("SRDP"), which was PSU's form of performance review.

11.     In or about 1998, Plaintiff's superior began sexually harassing Plaintiff.

12.     The conduct was sufficiently open and notorious that his supervisors knew should have known and effectively condoned the conduct.

13.     It is believed and averred that there was an endemic culture of such conduct and mutual condonement and systematic patterns and practices of both sexual harassment and retaliation against those who complained.

14.     Plaintiff's supervisor's conduct included:

   a.   Making comments to Plaintiff about how "sexy" she looked;

   b.   Offering quid pro quo promotions and privileges in return for requested sexual favors;

    c.   Informing Plaintiff that he had received sexual favors in exchange for promotions and privileges from other employees in the office;

    d.   Offering monetary compensation in exchange for sexual favors;

    e.   Groping Plaintiff's breasts and buttocks;

    f.   Sending Plaintiff sexually explicit pictures via email; and

    g.   Sending sexually explicit emails to Plaintiff

15.    Plaintiff initially attempted to ignore the comments and actions by her supervisor because she feared for her job.

16.    She was also concerned that any action to seek redress on her part could also cause retaliation against her husband who also works for the Defendant.

17.    The conduct caused feelings of helplessness and general anxiety which caused her to lose general enjoyment and to put up with conduct which would be intolerable to a reasonable person.

18.    Despite clear and repeated requests that the conduct desist and unequivocal communication that any and all such conduct was unwelcome, the actions of the supervisor worsened.

19.    In November 1999, after receiving another sexually inappropriate email from her supervisor, Plaintiff again requested that he stop sending her sexually inappropriate emails.

20.    Plaintiff also informed her supervisor that if he continued to make or send her sexually inappropriate comments she would report him to proper individuals.

21.    In response, Plaintiff's supervisor told her that if she reported him, "she would be in just as much trouble as he would be in, and that she would lose her job."

22.    He also threatened her by telling her "she would be sorry if she reported him."

23.     Plaintiff's supervisor refused to stop sexually harassing her after she told him to stop.

24.     PSU did not have a clear or coherent communication of its EEO compliance process and did not provided reasonable or adequate training to supervisors or education to employees about report and redress options.

25.     In June 2001, Plaintiff made a detailed complaint regarding the ongoing EEO misconduct of her Supervisor and her concerns regarding adverse employment actions to Defendant's Affirmative Action Office.

26.     By this conduct Plaintiff was engaged in protected activity to assert EEO rights.

27.     The Affirmative Action Office took no effective steps to provide redress or to route the complaint to any other EEO related entity at PSU charged with addressing such matters.

28.     To Plaintiff's knowledge, no meaningful action was taken to investigate her complaints, redress the situation, or provide remedial training or information to either plaintiff or the offending supervisor or his supervisor(s).

29.     After reporting her supervisor's actions, Plaintiff began receiving unsatisfactory evaluations by that supervisor.

30.     After reporting her supervisor's actions, she applied for numerous promotions and lateral transfers from the Property Inventory Department; but despite being more than qualified for the positions applied for, she was not chosen for any promotions or transfer.

31.     It is believed and averred that Plaintiff was not chosen for various positions in retaliation for her engaging in EEO protected activity and reporting her supervisor's sexual harassment.

32.     In 2006, without any meaningful investigation of her allegations or remedial action as to the repeated EEO violation, Plaintiff was offered a lateral transfer in exchange for her signing a Settlement and Release form on a "take or leave it" basis, which settled the prior discrimination claims.

33.     In an effort to mitigate damages, in desperation and resignation that other approropriate action would not be forthcoming, Plaintiff signed a Settlement Agreement and Release on March 14, 2006, and was transferred from the Property Inventory Department to Research Accounting.

**2006 Incident Related Litigation**

34.     After the settlement, Plaintiff was denied promotion opportunities based on adverse evaluations and other materials which remained in her file from prior to the settlement.

35.     Mr. Lovett filed an EEO/PHRC Complaint for Plaintiff in 2006,

36.     Mr. Bailey replaced Mr. Lovett as counsel after the parties failed to reach settlement at Court directed mediation.

37.     Summary Judgment dismissing the Complaint was granted by memorandum of Chief Judge Kane June 17, 2010, at Dkt. No. 1:08-cv-1195

38.     Summary Judgment was granted, inter alia, because Mr. Baily failed to produce or identify to the Court suffient evidence direct knowledge of the protected activity by the alleged acting parties or a causal relationship between the protected activity and the challenged actions; and also failed to demonstrate that the prior EEO settlement established a contract right not to use prior evaluations.

39.     The Summary Judgment memorandum also summarized some of the earlier Complaints in the context of its response to arguments regarding the Release Provisions and intent.

40.     Prior counsel argued novel (strained) contract, parole evidence and good faith and fair dealing theories; but inexplicably failed to instead argue that the prior evaluations were the product of the prior misconduct, were present effects of past discrimination and were discrimination as well as retaliation and that while the Settlement may have been disconcertedly silent on the issue of decay, removal or correction of the tainted evaluations, nothing in the Release authorized or immunized Defendant from the use of discrimination tainted evaluations ("present effects of past discrimination" based current discrimination/retaliation).

41.     Plaintiff accepts that the prior settlement and disposition of the failure to promote case *then pending* are final and that no claim may be revived as to that conduct merely by presenting evidence not formerly produced which may well fill the perceived void in causality or awareness.

42.     Nonetheless, prior deficiencies in proof, presentation or theory as to claims about to the prior conduct, do not prohibit Plaintiff from demonstrating as to the more recent conduct an the unbroken chain of conduct which reasonably demonstrates required causation and awareness by the offending actors as to the most recent post 2008 conduct regarding which this Complaint is filed.

43.     There is one claim that undersigned must segregate from the indisputably preserved administrative claims which form the basis of this Amended Complaint for purpose of accuracy and candor in pleading.

**Post-2006 Conduct Relevant to the Current Claim**

44.     Shortly after the close of the record in the prior matter, and before issuance of the Summary judgment dismissal June 17, 2010, Plaintiff applied for the position of Assistant Supervisor of the Property Inventory Office on May 11, 2010.

45.     The position required the candidate to have an Associate's Degree in a technical or administrative program or equivalent, plus two years of work-related experience.

46.     Plaintiff was more than qualified for the position having worked in the Property Inventory Department for twenty (20) years.

47.     The Office of Human Resources, the entity responsible for selecting the candidate for the Assistant Supervisor position, was aware of Plaintiff's prior PHRC activity.

48.     On June 3, 2010, Plaintiff was notified via email that she was not awarded the position and that they selected someone else "whose background and experience is more closely related to their expectations for the job."

49.     Plaintiff's experience and qualifications greatly exceeded those of the selected candidate, who was also male.

50.     This conduct was part of a continuing course of conduct which involved both the perpetuation of the effects of past discrimination and retaliation and current retaliation.

51.     It was in the context of these prior EEO matters that Plaintiff raised her current concerns which were labeled disruptive and used as a pretext for demeaning retaliatory conduct.

52.     The above incident was not part of the prior case, and yet does not appear to have been specifically plead in the two overlapping administrative Complaints giving rise to this action.

53.     It is averred however that these events were sufficiently disclosed and sufficiently related that they may properly be included in the present Amended Complaint.

**Most Recent Administrative Process**

54.      Mr. Baily was counsel in the Administrative proceedings below.

55.     The PHRC/EEO administrative proceedings include two essentially overlapping Complaints, which do not on their face reflect participation of Mr. Baily (inexplicably) and which appear to have been Plaintiff generated with assistance of the assigned PHRC Representative.

56.     Complaints were apparently filed in 2011 and 2012 which materially overlap, but do not appear to have ever been formally consolidated; for clarity, undersigned references them by docket and date of issuance of Right to Sue Letter as filing dates and incident dates overlap and would likely confuse rather than clairify.

**July 8, 2013 Matter**

57.     July 8, 2013, a Right to Sue letter was issued as to the Administrative Complaint docketed at EEO Dkt. 17F-2012-62035, cross-filed at PHRC Dkt. **2012**00853 (July 8 Matter).

58.     The July 8 Matter alleged retaliation relating to:

   a.   retaliatory false adverse content discovered in her personnel file;

   b.   coercive behavior by the PSU HR staff by improperly requiring Plaintiff to submit to "personality testing;"

   c.   involuntary placement on administrative leave;

   d.   retaliatory restrictions upon travel during administrative leave;

   e.   a negative performance review refusing to process, investigate or act upon an August 5, 2011 Complaint of retaliation with the direct response being if Plaintiff was fired Plaintiff could file a Complaint to get reinstated); and,

   f.   using the retaliatory review as a basis to make a threat as to continuation of her employment.

59.     The July 8 Matter Complaint signed by Plaintiff had specific times, dates, and places for relevant events and is incorporated here by reference.  *See* Exhibit A.

**July 29 Matter**

60.     On or about July 29, 2013, a Right to Sue letter was issued as to EEO Dkt 17F-2012-60337, cross filed at PHRC Dkt. **2011**02645 (July 29 Matter).

61.     The July 29 Matter essentially mirrored the July 8 Matter and addressed the following specific events:

a.  being subjected to CAPS Testing on May 5, 2011 for improper and retaliatory reasons after raising legitimate concerns about improper material in her personnel file and stating that prior sexual harassment had affected every aspect of her life;

b.  coercing plaintiff to submit to testing with an ominous threat of unspecified "negative consequences" without basis and for the purpose of intimidation and retaliation;"

c.  being subjected to initial testing on May 5, 2011, without basis and for the purpose of intimidation and retaliation;

d.  being subjected to follow-up testing on June 6, 2011 and June 13, 2011, without basis and for the purpose of intimidation and retaliation, which resulted in a determination of no basis for any work restrictions;

e.  being improperly and without basis put on administrative leave from May 5, 2011 to July 19, 2011 and for the purpose of intimidation and retaliation;

f.  being subjected to an adverse employment review without basis and for the purpose of intimidation and retaliation; and having an adverse letter placed in her personnel file without basis and for the purpose of intimidation and retaliation.

62.     The July 29 Matter Complaint also contained specific time, dates, and places which are likewise incorporated by reference. See Exhibit B.

63.     While both Complaints referenced prior protected EEO activity, neither summarized the original sexual harassment and initial retaliation which provided the context for the alleged retaliation, and the context for the expressions of concern which Defendant had callously characterized as her "disruptive" "outbursts" and then opportunistically and pretextually used to retaliate against and attempt to coerce Plaintiff into retirement; rather than properly seek to address and redress the longstanding harassment, discrimination, and retaliation.

64.     The separate Complaints essentially cover the same operative conduct and should be considered *in pari matria*.

65.     Plaintiff contends that the incident set forth in paragraphs 42 to 49 are reasonably within the scope of the administrative submissions, however inartful, and that they also form part of the evidence in support of a clearly pled claim of continuous and ongoing retaliation for having engaged in protected activity regarding the original sexual harassment.

66.     Each Complaint listed prior EEO/PHRC matters which constituted protected activity and by their nature would have been known to all acting parties in the present action based on references to those matters in the personnel file and based upon the ordinary requirements of their assigned duties.

67.     Prior counsel filed a timely Complaint in this matter; however, the Complaint did not list the conduct alleged in the administrative proceedings or outline the context in which that conduct arose; but instead included inflammatory extraneous matter which Plaintiff had not approved or pled administratively.

68.     Plaintiff terminated the service of prior counsel and undersigned entered an appearance seeking leave to assess and file an Amended Complaint with the claims Plaintiff had pled below and sought to pursue.

69.     This Court granted leave to undersigned counsel to file an Amended Complaint, if any, on or before May 30, 2014.

70.     Plaintiff has engaged in protected EEO activity previously at various docket numbers detailed in the administrative records in this matter and at the docket numbers listed above.

71.     The nature and scope of the prior EEO activity was such that all acting agents of Defendant had actual or constructive knowledge of the prior protected activity of the Plaintiff.

72.     It is alleged and averred that the conduct alleged in the Administrative Complaints above, in the context of the prior events, was retaliatory and of a nature as to be injurious and intolerable to a normal person, and, in fact, caused actionable adverse employment actions, and ordinary emotional distress to Plaintiff, and that compensatory damages and attorney's fees together with such other relief as the Court may deem just should be awarded to Plaintiff.

## COUNT I - RETALIATION - FEDERAL

73.     Paragraphs 1 through 72 are incorporated by reference herein as if restated verbatim.

74.     Defendant is an employer subject to the federal prohibition on retaliation for engaging in protected EEO activity.

75.     Plaintiff was an employee of Defendant entitled to the protections of the federal laws against retaliation for protected EEO activities.

76.     Defendant engaged in retaliatory conduct in violation of 42 U.S.C. § 2000e-3(a).

77.     As a direct and proximate result of the above unlawful retaliatory conduct, Plaintiff has suffered lost wages and emotional distress.

78.     As a direct and proximate result of the above unlawful retaliatory conduct, Plaintiff has been forced to incur legal expenses to vindicate her rights.

79.     All of the conduct was contrary to federal statutes prohibiting retaliation for engaging in protected EEO activities.

80.     Monetary and injunctive remedies are necessary to prevent the continuation of the recalcitrant course of conduct.

**WHEREFORE**, Plaintiff seeks lost wages together with unliquidated compensatory damages for pecuniary and/or benefit loss, ordinary emotional distress, legal fees, and such other relief as this Court may deem just to make Plaintiff whole and/or prevent recurrence of the prohibited conduct.

## Count II - State Retaliation Claim

81.     Paragraphs 1 through 80 are incorporated by reference herein as if restated verbatim.

82.     As stated above, this Complaint is a result of two administrative matters.

83.     Plaintiff filed complaints with the Pennsylvania Human Relations Commission (PHRC) at 201200853 and 201102645.

84.     The PHRC complaints were also cross filed with EEOC complaints.

85.     Right to Sue letters were issued on July 8, 2013 and July 29, 2013. More than 1 year has passed since the PHRC matters were filed.

86.     In response to the PHRC complaints, PSU wrongfully placed adverse material in Plaintiff's personnel file.

87.     PSU improperly coerced Plaintiff into personality testing and wrongfully placed her on administrative leave.

88.     Additionally, PSU issued Plaintiff unwarranted negative performance reviews.

89.     These actions by PSU were motivated in substantial part by retaliatory animus arising from the PHRC complaints filed by Plaintiff against PSU.

90.     As a direct, foreseeable and actual result of the discriminatory conduct Plaintiff suffered actionable adverse employment action, financial harms and ordinary emotional distress.

91.     The retaliatory conduct violates the Pennsylvania Human Relations Act (PHRA).

**WHEREFORE**, Plaintiff seeks lost wages together with unliquidated compensatory damages for pecuniary and/or benefit loss, ordinary distress, legal fees, and such other relief as this Court may deem just to make Plaintiff whole and/or prevent recurrence of the prohibited conduct.

**Respectfully submitted**,

/s/ Andrew W. Barbin
Andrew W. Barbin, Esquire
Atty. I.D. #43571
**ANDREW W. BARBIN, P.C.**
5 Kacey Court, Suite 102
Mechanicsburg, PA  17055
(717) 506-4670

Attorney for Plaintiff

DATED:      May 30, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEBORAH REARICK,** | : | **CIVIL ACTION LAW** |
| **Plaintiff** | : | **NO. 4:13-cv-02520** |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Blewitt)** |
| **THE PENNSYLVANIA STATE** | : | |
| **UNIVERSITY,** | : | **JURY TRIAL DEMANDED** |
| **Defendant** | : | |

## CERTIFICATE OF SERVICE

I, Andrew W. Barbin, Esquire, hereby certify that I am this day serving a copy of the foregoing document upon the person(s) and in the manner indicated below, which service satisfies the requirements of the Pennsylvania Rules of Civil Procedure, by depositing a copy of the same in the United States Mail, Mechanicsburg, Pennsylvania, with first-class postage prepaid and via ECF, as follows:

> James M. Horne, Esquire
> Philip K. Miles, III, Esquire
> McQuaide Blasko, Inc.
> 811 University Drive
> State College, PA  16801

> /s/ Andrew W. Barbin
> Andrew W. Barbin, Esquire

DATED:       May 30, 2014