IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH REARICK, | : | |
| | : | Case No. 4:13-cv-02520 |
| Plaintiff, | : | |
| vs. | : | Judge:  Matthew W. Brann |
| | : | Mag. Judge:  Thomas M. Blewitt |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, | : | Complaint filed:  10/7/2013 |
| | : | |
| Defendant. | : | *Electronically Filed* |

## DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY'S STATEMENT OF MATERIAL FACTS

1.     Plaintiff Deborah Rearick ("Rearick") is an adult individual residing at 3796 Powells Road, Petersburg, Pennsylvania.  (ECF No. 23, Am. Compl., ¶ 1)

2.     Defendant is The Pennsylvania State University (hereinafter "Penn State"), a state-related educational institution and instrumentality of the Commonwealth also organized and existing under the non-profit corporation laws of the Commonwealth of Pennsylvania.  Penn State's principal place of business is located at 201 Old Main, University Park, Pennsylvania.

3.     Rearick became employed with Penn State effective June 8, 1981. (ECF No. 23, Am. Compl., ¶ 8; ECF No. 57-1).

4.     In February 1986, Rearick assumed a position as an Inventory Clerk in what is currently known as the Cost Analysis and Property Inventory Division of the Office of the Corporate Controller.  In February 1992, Plaintiff's job title was

changed to that of Property Inventory Aide.  (ECF No. 23, Am. Compl., ¶ 9; ECF No. 57-2).

5.      In March 2006, Rearick accepted a lateral transfer to the position of Staff Assistant VII in the Research Accounting Division of the Office of Corporate Controller.  (ECF No. 23, Am. Compl., ¶ 33; ECF No. 57-3).

6.      In connection with her lateral transfer, Rearick executed an Agreement and General Release.  This agreement released all claims Rearick had against Penn State, including any claim based upon sexual harassment or retaliation.  (Id.).

7.      Prior to executing the Agreement and General Release, Plaintiff consulted with counsel of her choosing.  Specifically, Plaintiff met with Attorney Kathy Simpson of Harrisburg.  (ECF No. 57-6).[1]

8.      Rearick filed a lawsuit against Penn State in the United States District Court for the Middle District of Pennsylvania on June 24, 2008.  *Rearick v. Pennsylvania State Univ.,* No. 1:08-cv-1195 (M.D. Pa. 2008).  (ECF No. 57-4) (hereinafter "Rearick I").

9.      In Rearick I, Rearick brought claims under Title VII and the PHRA alleging that her failure to receive a job position in Penn State's College of Health and Human Development was in retaliation for her having made prior complaints

---

[1] SMF 3-7 are all set forth in this Court's Memorandum Opinion of June 17, 2010 (ECF No. 57-6), at pp. 1-2.

about sexual harassment by a supervisor.  Rearick also asserted a state law breach

of contract claim, claiming that the use of certain performance evaluation scores in

connection with the consideration of her job application breached the terms of an

Agreement and General Release entered into between Rearick and Penn State.

(ECF No. 57-5).

10.     On June 17, 2010, this Court entered a Memorandum and Order

granting Penn State's motion for summary judgment and dismissing Rearick's

case.  Prior to granting Penn State's summary judgment motion, this Court also

denied Rearick's request to reopen discovery.  (ECF No. 57-6).

11.     Rearick appealed both orders to the United States Court of Appeals

for the Third Circuit, which affirmed this Court in an Opinion issued March 4,

2011.  *Rearick v. Pennsylvania State Univ.,* No. 10-3041, 416 F. App'x 223 (3d

Cir. March 4, 2011).  (ECF No. 57-7).

12.     Almost immediately after the dismissal of Rearick I, Rearick filed

another lawsuit in this Court on April 4, 2011 against multiple Penn State

employees.  (ECF No. 57-8) (hereinafter "Rearick II").

13.     In Rearick II, Rearick asserted that in retaliation for filing the Rearick

I lawsuit, she was denied three job positions and issued a non-disciplinary letter

that was placed into her personnel file.  These purported retaliatory actions took

place throughout 2009 and 2010.  Rearick's initial complaint consisted of a single

count which claimed that the purported retaliation violated her rights under the First Amendment's Petition Clause.  (ECF No. 57-9).

14.     During the pendency before this Court of Rearick II, Rearick ultimately filed an Amended Complaint, a Second Amended Complaint and a Third Amended Complaint.  In the course of doing so, Rearick sought to add Penn State and other Penn State employees as Defendants.  (ECF No. 57-10).

15.     Throughout the course of Rearick II, this Court issued a series of Memoranda and Orders adverse to Rearick.  Ultimately, Rearick's claims were dismissed with prejudice.  (ECF No. 57-11).

16.     Rearick appealed the dismissal of Rearick II to the United States Court of Appeals for the Third Circuit, which affirmed the dismissal in an opinion dated July 1, 2013. *Rearick v. Spanier,* No. 12-3499, (3d Cir. July 1, 2011).  (ECF No. 57-12).

17.     Along with the Rearick I and Rearick II lawsuits, Rearick also filed multiple administrative complaints against Penn State beginning in 2006 and continuing through 2012.  (ECF No. 57-13).

18.     In accordance with Penn State employment practice, Rearick receives an annual written performance evaluation referred to as a Staff Review and Development Plan ("SRDP").

19.     In 2007, 2008, 2009 and 2010, Rearick received an overall rating of "performance meets expectations."  (ECF No. 57-14).

20.     On May 5, 2011, Susan Wiedemer, Associate Controller, and Robert Maney, Senior Director of Employee Relations in the Office of Human Resources, met with Rearick out of a concern for her emotional well-being.  (ECF No. 57-15).

21.     The ultimate outcome of the meeting of May 5, 2011, was that Rearick was placed on paid administrative leave until she returned to work on July 19, 2011.  (Id.).

22.     Rearick was paid in full with no time charged to vacation or sick leave during the time that she was out.  (ECF No. 57-16, p. 19 of 22).

23.     The meeting of May 5, 2011 and the decision to provide Rearick paid time off resulted from months of observation that Rearick appeared increasingly nervous, anxious and emotional in the workplace.  Rearick's outbursts were disruptive to the Office and created an uncomfortable environment for her co-workers.  (ECF No. 57-15).

24.     Examples of Rearick's behavior were documented in her 2011 SRDP. (ECF No. 57-17).

25.     In October 2010, Rearick became upset when the door from the stairway to the main hall of the floor where the Office of Research Accounting is

located was inadvertently not unlocked, even though Rearick herself had a key and could unlock the door.  (ECF No. 57-15 and ECF No. 57-17).

28. Another incident took place in January 2011 when office mail delivery was delayed for several days.  When the mail bin arrived, there was a large quantity of mail to be processed and Rearick became visibly distraught. Although there was no pressure to quickly process the mail, Rearick walked around the Office wringing her hands and outwardly expressing concern.  (Id.).

27. A third example of Rearick's behavior is from March 2011, when the mainframe computer system was experiencing a problem and was not available system-wide to any of the Office staff, including Rearick.  Again, Rearick became visibly upset and anxious even though all staff members were affected.  (Id.).

28. Rearick had also been instructed in writing on October 15, 2010, to avoid "the behavior of disrupting your co-workers and creating an uncomfortable environment in the work place . . . ."  (ECF No. 57-18).

29. As a result of these behavior issues, discussions were ongoing for several months before Rearick filed her complaint in Rearick II on April 4, 2011, regarding possible intervention with Rearick and placing her on leave until she was certified as fit for a return to work.  (ECF No. 57-15 and ECF No. 57-19).

30. The immediate impetus for the meeting of May 5, 2011 and the placement of Rearick on leave took place on or about May 3, 2011, when Rearick

requested to meet with Jose Reyes, Human Resources Manager, regarding a letter

from 1994 that she had apparently just became aware of which had been produced

in discovery during the course of Rearick I.  (ECF No. 57-15 and ECF No. 57-20).

31.     The subject matter of the 1994 letter related to concerns expressed by

a co-worker of Rearick regarding Rearick's report of a dream in which she had

brought a gun into the workplace and used it on everyone.  (ECF No. 57-21).

32.     Given the subject matter of the letter and the ongoing concern for

Rearick's emotional well-being, it was decided to move forward with intervention

with Rearick.  (ECF No. 57-15).

33.     Accordingly, on May 5, 2011, Wiedemer and Maney met with

Rearick and accompanied her across campus to meet with a University

psychologist.  Rearick then began her paid leave.

34.     On May 16, 2011, Wiedemer wrote to Rearick, confirmed the terms of

her paid leave, and advised Rearick that she would remain on leave until such time

as Rearick met with a professional of her choice (Dr. Jubala) and provided a report

addressing her fitness to return to work.  (ECF No. 57-22).

35.     On July 11, Dr. Jubala provided a written evaluation certifying that

Rearick was capable of resuming employment, as a result of which Rearick's paid

leave ended and she returned to her regular job.  (ECF No. 57-23).

36.     When Rearick returned to work on July 19, 2011, she met with the Research Accounting Office's Director, James Mattern and the Office's Manager, Richard Killian.  The first part of the meeting was spent bringing Rearick up to date on matters that had occurred in the office while she was out of leave, and the second part of the meeting involved a review of Rearick's 2011 SRDP.  (ECF No. 57-24).

37.     With regard to the SRDP, Rearick was given an overall rating of performance partially meets expectations.  A key factor in this rating was Rearick's history of disruptive behavior.  (ECF Nos. 57-24 and 57-25).

38.     During this meeting, Rearick was specifically informed that she needed to cease her disruptive behavior, including emotional outbursts and getting upset or angry in front of other office personnel.  (ECF No. 57-24).

39.     Rearick was informed at the meeting of July 19, 2011 as well as in the memorandum of July 21, 2011, that she could face formal disciplinary action if her behavior did not improve.  (ECF No. 57-24).

40.     On June 6, 2012, a meeting of all staff within the Research Accounting office was held to discuss the departure of the Director of Research Accounting (James Mattern) and the future of the Department.  (ECF Nos. 57-15, 57-26, 57-27 and 57-28).

41.     The meeting referenced in paragraph 40 was attended by everyone from Research Accounting who was at work that day as well as by Susan Wiedemer, Associate Controller, and Jose Reyes, Human Resources Manager. Rearick was among those in attendance at the meeting.  (Id.).

42.     During this meeting, staff was informed that James Mattern was no longer employed with Penn State.  (Id.).

43.     As the meeting progressed, Rearick became visibly emotional and upset.  Rearick then abruptly stood up and announced she had to leave the meeting. In doing so, Rearick called attention to herself and disrupted the staff meeting. (Id.).

44.     After the meeting, some of the staff expressed concerns regarding Rearick's disruptive behavior.  In addition, Rearick remained in the common area of the office and was visibly upset and crying. (Id.).

45.     Subsequent to this incident, a meeting was held on June 11, 2012, between Richard Killian, Manager of Research Accounting, Michelle Bonsell, Supervisor of Research Accounting's Governmental Team and Rearick.  (ECF No. 57-26 and 57-27).

46.     At the June 11, 2012 meeting, Killian and Bonsell discussed with Rearick the disruptive nature of her conduct on June 6, 2012 as well as the fact that

her conduct was inconsistent with the instructions provided to her as part of her 2011 SRDP.  (Id.).

47.     After the June 11, 2012 meeting, Killian reported on the substance of the meeting to Ms. Wiedemer and Mr. Reyes.  Mr. Reyes in turn consulted with Robert Maney, then Director of Employee Relations.  (ECF No. 57-28).

48.     Given Rearick's conduct during and after the June 6, 2012 meeting and the continuing issue with her disruptive behavior, it was determined that a formal disciplinary letter should be issued in accordance with University Policy HR 78.  (ECF No. 57-29 and ECF No. 57-30).

49.     Rearick remains employed with Penn State.  Her SRDP's for 2013, 2014 and 2015 all reflect an overall rating of "meets expectations."  (ECF No. 57-16, p. 22 of 22 (N.T. 2:37-2:38)).

Respectfully submitted,

McQUAIDE BLASKO, INC.

Dated:  September 30, 2016          By:  s/James M. Horne
                                        James M. Horne
                                        Pa. I.D. 26908
                                        jmhorne@mqblaw.com
                                        811 University Drive
                                        State College, PA  16801
                                        (814) 238-4926

                                        Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH REARICK, | : | |
| | : | Case No. 4:13-cv-02520 |
| Plaintiff, | : | |
| | : | Judge:  Matthew W. Brann |
| vs. | : | |
| | : | Mag. Judge:  Thomas M. Blewitt |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, | : | Complaint filed:  10/7/2013 |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant's Statement of Material Facts in Support of Motion for Summary Judgment in the above-captioned matter was served via U.S. Mail this 30th day of September, 2016, to the attorneys/parties of record as follows:

Deborah Rearick, *pro se*
3796 Powells Road
Petersburg, PA  16669
(814) 667-2167

McQUAIDE BLASKO, INC.

By:  s/James M. Horne
James M. Horne, Esquire
I.D. No. 26908
811 University Drive
State College, PA 16801
(814) 238-4926

Attorneys for Defendant

11